# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |  | |
|---|---|---|---|
| DARIANNA RATCLIFF and JOANNA RATCLIFF, | : | 1:20-cv-680 | |
| Plaintiffs, | : | | |
| v. | : | Hon. John E. Jones III | |
| UNITED STATES OF AMERICA, | : | | |
| Defendant. | : | | |

## **MEMORANDUM**

## **January 14, 2021**

Presently pending before the Court is Defendant United States of America's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"). (Doc. 16). The Motion has been fully briefed, (Docs. 18, 25, 26), and is ripe for disposition. For the following reasons, the Motion shall be granted.

### I.   BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiffs' Amended Complaint, (Doc. 15), and viewed in the light most favorable to them.

Plaintiff Darianna Ratcliff, the daughter of Plaintiff Joanna Ratcliff, is a 28-year-old resident of York, PA. (Doc. 15 at ¶ 6). Her father, Darren Ratcliff, is a

United States employee who has been stationed overseas in Japan and Germany. (*Id.* at ¶ 7).

In 2010, the Ratcliffs were stationed in Yokosuka, Japan. (*Id.* at ¶ 8). During that time, Darianna attended Yokosuka Middle School, a school for children of United States employees operated by the United States Department of Defense Education Activity ("DoDEA"). (*Id.* at ¶¶ 8, 13).

One of Darianna's teachers at Yokosuka Middle School was Gary Christopher. (*Id.* at ¶ 14). Plaintiffs allege that, as a United States employee, Mr. Christopher "was responsible for the safety, security, protection, discipline, and guidance of the students under his care and control, and thereby acted and performed duties of a law enforcement officer." (*Id.* at ¶ 15).

Rather than protect Darianna, Mr. Christopher allegedly "lured" her to "secluded places on school property where he raped and molested her." (*Id.* at ¶¶ 14–16). Plaintiffs accuse Mr. Christopher of abusing his position of trust to "deceive, control, direct, and detaine [sic] Plaintiff Darianna Ratcliff for the purpose of sexually abusing her." (*Id.* at ¶ 16). As a result of this heinous abuse, which Plaintiffs allege other employees were aware of and ignored, Darianna was

unable to attend school regularly or "otherwise avail herself of the educational experience to which she was entitled." (*Id.* at ¶¶ 18–19).

Plaintiffs initiated this action against the United States and Mr. Christopher on April 23, 2020. (Doc. 1). On October 19, Plaintiffs filed the now-operative Amended Complaint against the United States only, dropping Mr. Christopher as a defendant. (Doc. 15). The Amended Complaint asserts a single cause of action, broadly captioned as "FTCA and MCA and Other Laws of the United States Governing the Actions of Employees of the United States Serving Overseas." (*Id.* at ¶¶ 24–26).

Defendant filed the motion *sub judice* on November 2, 2020, seeking dismissal of the Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Doc. 16). Defendant's brief in support of the Motion followed on November 16. (Doc. 18). Plaintiffs filed their opposition brief on December 6, 2020, (Doc. 25), to which Defendant replied on December 11, (Doc. 26). Accordingly, the Motion is ripe for our review. For the following reasons, we shall grant the Motion and dismiss the Amended Complaint.

## II. STANDARD OF REVIEW

When a defendant submits a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court must determine whether the motion is a "facial" or "factual" attack. A facial attack

considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* As such, a facial attack "contests the sufficiency of the pleadings." *Id.* (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). A factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* A factual attack requires a factual dispute that concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites. *Id.* (alterations in original) (internal citations omitted) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). The plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction. *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)).

### III.   DISCUSSION

We do not have jurisdiction to hear this case. As a sovereign, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586

(1941)).  Its consent to be sued "cannot be implied but must be unequivocally expressed."  *Id.*  The Federal Tort Claims Act ("FTCA") operates as a limited waiver of the United States' sovereign immunity, subject to certain enumerated exceptions.  *See Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003).  As relevant here, Congress expressly withheld its consent to suit for "[a]ny claim arising in a foreign country."  28 U.S.C. § 2860(k); *see also Heller v. United States*, 776 F.2d 92, 95 (3d Cir. 1985).  Because Plaintiffs' claim arose in Japan, the "foreign country" exception to the FTCA's waiver of sovereign immunity prevents us from exercising jurisdiction.

That obstacle notwithstanding, Plaintiffs attempt to persuade us that an executive order signed by President Clinton in 2000 had the effect of waiving sovereign immunity and confers us with jurisdiction over this action.  This argument is meritless.

The executive order Plaintiffs rely on—EO 13160 (the "Order")—does not contain a single reference to jurisdiction or sovereign immunity.  EO 13160, signed June 23, 2000, seeks to "achieve equal opportunity in Federally conducted education and training programs and activities."  Exec. Order No. 13160, 65 Fed. Reg. 39775 (June 23, 2000).  To that end, EO 13160 prohibits discrimination on the basis of sex, color, national origin disability, religion, age, sexual orientation, and status as a parent in federal conducted education and training programs.  *Id.* at

5

§ 1-102.  The Order also directs the Attorney General to publish appropriate rules, regulations, policies, or guidance to implement that goal.  *Id.* at § 5-501.  Pursuant to that mandate, DoDEA has issued several administrative instructions to help ensure "a discrimination-free learning and work environment in DoDEA-conducted education and training programs and activities in accordance with [EO] 13160."  *See, e.g.*, DoDEA Administrative Instruction No. 1443.01, Volume 1 (February 22, 2019).

We have reviewed the snippets from the various DoDEA administrative guidance documents to which Plaintiffs refer us, (Doc. 25 at 8–10), but we fail to see how anything issued by DoDEA could possibly have the effect of waiving the United States' sovereign immunity for claims arising in a foreign nation.  Rather, the guidance documents appear to primarily articulate how the agency should adjudicate allegations of discrimination to ensure compliance with EO 13160.  By way of example, AI 1443.01-V1 contains this policy guidance:

> Any final decision on a discrimination complaint that has gone through both the lower-level complaint process and a request for reconsideration from a next-higher-level DoDEA official is eligible for appeal to the DoDEA Investigations and Internal Review Division (I&IR) at DoDEA headquarters (HQ) for an independent review and evaluation to determine whether or not the final decision is in compliance with EO 13160 and applicable DoDEA implementing policies or guidance, including this Issuance.  Any findings by DoDEA I&IR of noncompliance shall be referred to the DoDEA Director to ensure appropriate corrective action is taken to restore compliance and a discrimination-free learning and work environment.

DoDEA AI 1443.01-V1, at § 1.2(e).  While EO 13160 does not preclude judicial review of final administrative decisions in accordance with the Administrative Procedure Act, see 65 Fed. Reg. 39775 at § 8-801, Plaintiffs do not present their complaint as an appeal of any administrative decision.  Instead, Plaintiffs simply seek to hold the United States liable for an employee's intentional tort that occurred overseas.

The only way around the FTCA's exception to the Government's waiver of sovereign immunity for actions rising in a foreign country would be for Plaintiffs to "identify a *specific statutory provision*" that waives sovereign immunity. *Clinton Cty. Comm'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)) (emphasis added); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text.").  Because Plaintiffs can cite no such statute, the United States is immune from suit for the alleged conduct of an employee that occurred in a foreign country. *See Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1286 (D. Kan. 2017) ("Of course, Executive Order 13160 is not an act of Congress.").

We therefore lack jurisdiction, and the Amended Complaint must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion to Dismiss. A separate order shall issue in accordance with this ruling.